UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CHARLES SHANK,<br><br>            Plaintiff,<br><br>   v.<br><br>RANDY CASTEEL; CHRIS ENDRESEN;<br>JON BRAND; and MALCOLM FLEMING,<br><br>            Defendants. | Case No.  C04-5843RJB<br><br>ORDER DENYING<br>DEFENDANTS' MOTION FOR<br>SUMMARY JUDGMENT |

This matter comes before the Court on Defendants' Motion for Summary Judgment (Dkt. 59). The court has considered the pleadings filed in support of and in opposition to the motion and the file herein.

FACTUAL AND PROCEDURAL HISTORY

This dispute arose in the context of Plaintiff's employment with the Kitsap County Department of Public Works.  Plaintiff alleges that his federal rights of free speech and freedom of assembly were violated when his superiors and co-workers retaliated against him for (1) supporting two proposals to build new bridges, (2) his affiliation with two quasi-political organizations, and (3) his role in providing information used to write two negative editorials about his department.  Plaintiff alleges that the retaliation included, among other things, his supervisors' refusal to assign him meaningful work, denial of promotion, reduction of his duties, and a hostile work environment.

1    Plaintiff began working as a Senior Transportation Planner for Kitsap County in November 1992.
2 Plaintiff states that he publicly endorsed constructing a bridge from Bainbridge Island to Bremerton, and
3 another bridge across Sinclair Inlet, in order to solve traffic congestion during 1996 through 1999.
4 Plaintiff alleges that Defendant Chris Endresen, Kitsap County Commissioner, opposed these plans for
5 political reasons, and attempted to force Plaintiff to oppose these plans as well. Plaintiff alleges that
6 Defendant Endresen sought to terminate his employment after he refused to change his views.

7    From August 1999 to March 2000, Plaintiff was reassigned to the position of Development
8 Review Traffic Engineer. In March 2000, Plaintiff was reassigned to the position of Traffic Safety and
9 Design Engineer. Plaintiff alleges that his superiors began requiring David Smith, his immediate
10 supervisor, to give him negative evaluations and take away his duties in retaliation for his support of the
11 two bridges.

12    On November 28, 2001, a local editorialist, Adele Ferguson, wrote an article alleging that one of
13 Plaintiff's supervisors, Ron Yingling, planned to retire, collect retirement pay, then return to work for the
14 County in his former position. Plaintiff contends that he sent an email to an acquaintance describing this
15 process, and that his acquaintance forwarded the email to Ms. Ferguson, who then used it for the article
16 without disclosing Plaintiff's name. Plaintiff alleges that he was subjected to severe harassment in his
17 workplace in retaliation for the editorial, which many people suspected originated with him. Plaintiff
18 alleges that Mr. Smith objected to the harassment, but that his objections were ignored.

19    Plaintiff alleges that Mr. Yingling, who retired shortly thereafter, continued to visit the Public
20 Works building and question employees in an effort to determine who had provided information for the
21 article. Plaintiff alleges that Mr. Yingling's behavior was tolerated because Mr. Yingling's cousin,
22 Defendant Randy Casteel, is the Public Works Director and Plaintiff's second level superior.

23    On December 12, 2001, Ms. Ferguson wrote a second article criticizing the County for nepotism,
24 based on information received from Plaintiff, who told her that the Kitsap County Auditor had hired
25 Defendant Endresen's husband as a temporary employee. Plaintiff alleges that he also suffered harassment
26 and retaliation for this article.

27    In early 2002, the Personnel Division at the County conducted a salary survey review, which
28 denied Plaintiff an increase in salary. Plaintiff alleges that he was told by his supervisor (not named in

ORDER
Page - 2

Plaintiff's Complaint) that some members of the salary review committee had been instructed to deny him a salary increase. Plaintiff alleges that all other engineers received an increase in pay, and that he was denied an increase in retaliation for his support of the two bridges and his participation in the two articles.

In or around September 2002, Plaintiff applied for the position of Senior Program Manager, which became vacant when Defendant Jon Brand was promoted to Assistant Director of Roads. Plaintiff alleges that Mr. Brand told him it was unlikely Plaintiff would get the position, because he speaks out in public, and because of his current position as Vice President of the Kitsap Alliance of Property Owners (KAPO), a private property rights coalition. Plaintiff alleges he was not hired for this position in retaliation for his support of the two bridges, the articles, and his affiliation with KAPO.

On December 10, 2005, Plaintiff brought this suit in federal court, alleging violations of his federal civil rights pursuant to 42 U.S.C. § 1983. Specifically, Plaintiff alleges that his First and Fourteenth Amendment rights of freedom of speech and freedom of assembly were violated when his superiors and coworkers retaliated against him for speaking out on matters of public concern, disclosing illegal or improper actions, and belonging to certain political associations. Plaintiff also alleges that his First and Fourteenth Amendment rights of due process were violated when he was denied a pay increase and a promotion, which interfered with his property rights in employment.

On March 1, 2005, by Order of the Court (Dkt. 24), the following were dismissed from this action: (1) Defendants Kitsap County, Ron Yingling, and Bert Furuta, (2) Plaintiff's claims for intentional infliction of emotional distress and whistle blower retaliation (RCW 42.41.010 *et. seq.*), and (3) all discrete alleged acts and injuries that occurred before October 10, 2001.

## MOTION FOR SUMMARY JUDGMENT

On November 25, 2005, Defendants filed this Motion for Summary Judgment seeking dismissal of all remaining claims in this matter. Defendants contend that there are no genuine issues of material fact in this case, and that summary judgment dismissal is justified as a matter of law. Defendants argue that the record is clear and unequivocal in this regard, and that Plaintiff has failed to present any credible evidence to support his claims.

With regard to Plaintiff's claim that he was denied promotion, Defendants point out that inconsistencies exist between Plaintiff's claim and testimony in the record. Specifically, Plaintiff alleges that he was not promoted to Assistant Director for Public Works in April 2002 due to retaliation, yet testifies that everyone knew ahead of time that Jon Brand would be selected for the position because of "Randy's opinion he would be a good guy to take over from Ron." Dkt. 59, at 4 (quoting Shank Deposition, 262:19-263:10). Defendants further argue that Mr. Brand's qualifications were superior to Plaintiff's qualifications, and that this was the only reason for hiring Mr. Brand.

Plaintiff also alleges that he was not promoted to the position of Senior Program Manager-Engineer in December 2003 due to retaliation. Defendants argue that the candidate who was selected, Jerry Hauth, was clearly more qualified that Plaintiff with regard to design and construction of county and city roads, skills which were required for the position. Defendants argue that Plaintiff's qualifications were properly considered, and that the record does not show that retaliation played any role in the position being offered to someone else.

With regard to Plaintiff's allegation that he was denied a salary increase, Defendants argue that the review was conducted fairly, and that there was nothing about the actual duties or responsibilities of Plaintiff's position that justified a salary increase. With regard to Plaintiff's allegations of harassment, Defendants argue that Plaintiff's testimony offers only a few examples by coworkers, not supervisors, following the publication of the articles, and that the conduct stopped as soon as Plaintiff complained to his supervisor.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving

1 party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non specific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

## DISCUSSION

42 U.S.C. § 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law[.]

*See also Ostad v. Oregon Health Sciences University*, 327 F.3d 876, 882 (9th Cir. 2003).

In order to establish a prima facie case of retaliation under the First Amendment, a plaintiff must show that (1) he engaged in protected speech, (2) the defendant took an "adverse employment action" against him, and (3) his speech was a "substantial or motivating" factor for the adverse employment action. *Thomas v. City of Beaverton*, 379 F.3d 802, 808 (9th Cir. 2004), *citing Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003). Under the first element, a plaintiff's speech is protected only if he spoke "as a citizen upon matters of public concern" rather than "as an employee upon matters only

of personal interest." *Thomas*, 379 F.3d at 808, *citing Roe v. City of San Diego*, 356 F.3d 1108, 1112 (9th Cir. 2004).

"Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Pool v. VanRheen*, 297 F.3d 899, 906 (9th Cir. 2002), *quoting Connick v. Myers*, 461 U.S. 138, 143-44 (1983). "The inquiry into the protected status of speech is one of law, not fact." *Pool*, 297 F.3d at 906, *quoting Connick*, 461 at 148 n.7.

If a plaintiff can establish a prima facie claim, the burden shifts to the employer to demonstrate either that, under the balancing test established by *Pickering v. Board of Education,* 391 U.S. 563, 568 (1988), the employer's legitimate administrative interests outweigh the employee's First Amendment rights or that, under the mixed motive analysis established by *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 287 (1977), the employer "would have reached the same decision even in the absence of the [employee's] protected conduct." *Thomas*, 379 F.3d at 808, *citing Ulrich v. City & County of San Francisco*, 308 F.3d 968, 976-77 (9th Cir. 2002).

When determining whether a public employee's right to freedom of association is protected, courts engage in the same inquiry used to determine whether a plaintiff's right to freedom of speech is protected (i.e., whether it involves a matter of public concern). *Hudson v. Craven*, 403 F.3d 691, 698 (2005).

Here, after a careful review of the record, Plaintiff's speech regarding his support of the two bridges and the personnel activities at the Kitsap County Department of Public Works appears to be a matter of public concern and therefore protected under the First Amendment. Further, given that the Kitsap Alliance of Property Owners primarily exists to support the property rights of land owners in and around Kitsap County, absent any evidence to the contrary, affiliation with this group also involves a matter of public concern and is therefore protected under the First Amendment.

Plaintiff's evidence, although mostly circumstantial in nature, is sufficient at this stage to support a prima facie claim for a violation of these rights through retaliation. Specifically, Plaintiff's reassignments over the years, denial of a salary increase, and testimony that he was denied meaningful work supports his claims that retaliation was, at least in part, a motivating factor behind Defendant's actions. Given Plaintiff's prime facie claims, the burden shifts to Defendants to show either that they had a legitimate

1  government interest or that their decisions in this matter would have been the same had Plaintiff not
2  spoken out about the bridges or the hiring practices of Kitsap County Department of Public Works, or
3  had not been affiliated with the Kitsap Alliance of Property Owners.

4  While Defendants have put forth some evidence that supports their hiring decisions, specifically
5  that Jon Brand and Jerry Hauth were more qualified than Plaintiff in certain areas, Defendants have not
6  met their burden of showing that they would have denied Plaintiff his salary or advancement had he not
7  spoken out about the bridges, hiring practices, or been a member of KAPO.  In order for the Court to
8  dismiss this case as a matter of law through summary judgment, the record must be clear and unequivocal
9  that no genuine issue of material fact exists.  Given the significant amount of circumstantial evidence in
10 this matter, Defendants have not met this burden, and Plaintiff's claim must advance to trial as a matter
11 of law.

## ORDER

Therefore, it is hereby

**ORDERED** that Defendants' Motion for Summary Judgment (Dkt. 59) is **DENIED**.

The Clerk of the Court is instructed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 6th day of January, 2006.\

Robert J. Bryan
United States District Judge